**Robert Kyle ORMSBY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 57537.**

Court of Criminal Appeals of Texas, Panel No. 1.

May 9, 1979.

Rehearing Denied July 16, 1980.

A. Yes.

Keith Woodley, Comanche, for appellant.

Gary R. Price, Dist. Atty. and W. Stephen Ellis, Asst. Dist. Atty., Brownwood, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and CLINTON, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction of involuntary manslaughter. The jury assessed punishment at two (2) years, probated, and a $2,500 fine.

Although the sufficiency of the evidence is not challenged, a brief recital of the facts will put our disposition of the case in better perspective. The record reflects that the appellant was indicted and tried pursuant to V.T.C.A., Penal Code, § 19.05, for an accident which occurred when he fell asleep while at the wheel of a motor vehicle during the late evening hours of November 24, 1976. According to the testimony of the investigating officers, appellant's vehicle crossed the center line into the lane of oncoming traffic and struck the vehicle in which Deborah Stitt was a passenger. Stitt died as a result of injuries received in the accident. Testimony from several witnesses revealed that the appellant had a strong odor of beer on his breath, that his speech was slurred, and that in the opinion of these witnesses he was intoxicated.

Appellant challenges the trial court's failure to include in its charge to the jury, over timely objection, an instruction on criminal negligence, asserting that the same is a lesser included offense of involuntary manslaughter. The State counters this contention by urging that "the culpable mental state required in such an instruction would be of a higher degree or greater than that provided in the statute and under the indictment for which the defendant was tried and convicted." Therefore, the issue in the instant case is whether criminal negligence is a lesser culpable mental state than recklessness so as to make criminally negligent homicide a lesser included offense of involuntary manslaughter.

Involuntary manslaughter is defined by V.T.C.A., Penal Code, § 19.05(a) as follows:

"(a) A person commits an offense if he:

"(1) recklessly causes the death of an individual; or

"(2) by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, causes the death of an individual."

In reference to this definition, the Practice Commentary which follows the section reads in pertinent part:

"Section 19.05 defines involuntary manslaughter as a reckless killing, with Subsection (a)(2) defining driving while intoxicated as recklessness per se." V.T.C.A., Penal Code, § 19.05, Practice Commentary, p. 149.

To this extent, recklessness is defined by V.T.C.A., Penal Code, § 6.03(c):

"A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when his is aware of but consciously disregards a substantial and unjustifiable

risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

Criminally negligent homicide is defined in V.T.C.A., Penal Code, § 19.07(a):

"A person commits an offense if he causes the death of an individual by criminal negligence."

In addition, V.T.C.A., Penal Code, § 6.03(d) provides the following definition for criminal negligence:

"A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

Finally, and perhaps most enlightening, is the classification of culpable mental states which is set out in V.T.C.A., Penal Code, § 6.02. Subsections (d) and (e) of that provision read as follows:

"(d) Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:

"(1) intentional;

"(2) knowing;

"(3) reckless;

"(4) criminal negligence.

"(e) Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged."

■ Also instructive in the resolution of this question is the court's language in *Lewis v. State*, 529 S.W.2d 550 (Tex.Cr.App. 1975):

"We agree that the offenses of involuntary manslaughter and criminally negli-

gent homicide differ in the culpable mental state which suffices to establish the commission of each offense. Reckless conduct as defined by V.T.C.A. Penal Code, Section 6.03(c) [footnote omitted] involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards that risk. Criminal negligence as defined by V.T.C.A. Penal Code, Section 6.03(d) [footnote omitted] involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof. At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct; the key to criminal negligence is found in the failure of the actor to perceive the risk. *As defined, criminal negligence is a lesser culpable mental state than recklessness; mere proof of criminal negligence would not suffice to support a conviction for the offense of involuntary manslaughter. . . .*" (Emphasis added.)

Moreover, it was expressly held in *Moore v. State*, 574 S.W.2d 122 (Tex.Cr.App.1978), that where a conviction is had on involuntary manslaughter and the evidence is sufficient to raise the issue of criminal negligence, the defendant is entitled to a charge on the lesser included offense of criminally negligent homicide.

It remains to be determined, therefore, whether the evidence adduced at trial in the case at bar is sufficient to raise "an issue of a reasonable doubt whether the appellant was aware but consciously disregarded a substantial and unjustified risk" that his conduct "would result in the death of the deceased." *Moore v. State*, supra, at p. 124.

■ The record reflects that the appellant undertook the operation of a motor vehicle while in a state of exhaustion. Moreover, it is clear from the record that the appellant had driven the road on which the accident occurred before, and that he was familiar with its shoulderless narrow surface and many hills. We conclude that this, coupled with appellant's admission that he had consumed about three beers on an

empty stomach prior to his driving the car, was sufficient to raise the issue of criminal negligence as defined, supra, in § 6.03(d).

■ This court has consistently held that when the evidence from any source raises an issue that a lesser included offense may have been committed and that a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Moore v. State,* supra; *Esparza v. State,* 520 S.W.2d 891 (Tex.Cr.App.1975).

■ We conclude that it was error for the trial court to refuse appellant's requested charge on criminal negligent homicide, leaving the jury no alternative but to convict for involuntary manslaughter or to acquit.

The judgment is reversed and the cause is remanded.

Before the court en banc.

## STATE'S MOTION FOR REHEARING

DOUGLAS, Judge, dissenting.

The majority overrules the State's motion for rehearing without written opinion.

False premises lead inexorably to false conclusions.

The panel opinion adopted part of the Practice Commentary to V.T.C.A., Penal Code, Section 19.05: "Section 19.05 defines involuntary manslaughter as a reckless killing, with Subsection (a)(2) defining driving while intoxicated as recklessness per se."

Practice commentaries, like obiter dicta, may prove persuasive, but are not binding authority. Faced with a choice between the Practice Commentary to Section 19.05 and dictum from his own well-reasoned opinion in *Ex parte Ross,* 522 S.W.2d 214 (Tex.Cr. App.1975), the author of the panel opinion has chosen to follow the Practice Commentary. That the choice was the wrong one is demonstrated by the plain language of Section 19.05, by the rulings of this Court and the strictures of the Legislature upon the predecessors to Section 19.05, and by the sound reasoning of *Ex parte Ross.*

V.T.C.A., Penal Code, Section 6.02(b), provides that:

"(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element."

V.T.C.A., Penal Code, Section 19.05, provides that:

"(a) A person commits an offense if he:

"(1) recklessly causes the death of an individual; or

"(2) *by accident or mistake* when operating a motor vehicle while intoxicated and, by reason of such intoxication, causes the death of an individual.

"(b) For purposes of this section, 'intoxication' means that the actor does not have the normal use of his mental or physical faculties by reason of the voluntary introduction of any substance into his body.

"(c) An offense under this section is a felony of the third degree." (Emphasis supplied)

It cannot be gainsaid that the Legislature which codified Section 19.05 knew how to set up a presumption of recklessness when it wanted to. V.T.C.A., Penal Code, Section 22.05, provides that:

"(a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.

"(b) Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.

"(c) An offense under this section is a Class B misdemeanor."

But in Section 19.05, the Legislature did not choose to define driving while intoxicated as presumptively reckless; the causing of death by reason of intoxication while driving was instead stated as an *alternative* form of involuntary manslaughter.

If the phrase *"by accident or mistake"* does not, when presented disjunctively with recklessness as an alternative means of

committing involuntary manslaughter, plainly dispense with a culpability requirement where the death of an individual is caused by the intoxication of the operator of a motor vehicle, it is difficult to see how the Legislature could so dispense.

Neither was the Legislature without reason for establishing Section 19.05(a)(2) as an alternative to reckless homicide. Section 19.05 itself provides internal evidence of this reason, by defining intoxication as meaning that " . . . the actor does not have the normal use of his mental or physical faculties by reason of the voluntary introduction of any substance into his body."

This was exactly the point grasped by Presiding Judge Onion in his opinion in *Ex parte Ross*:

" . . . An examination of other sections of the Penal Code gives one insight into the Legislature's attitude concerning intoxication. Section 8.04 deals with intoxication, defining such as '*disturbance of mental* or physical *capacity* resulting from the introduction of any substance into the body.' (Emphasis added). Voluntary intoxication does not constitute a defense to the commission of a crime, but evidence of temporary insanity caused by such intoxication may be introduced by the accused in mitigation of the penalty attached to the offense for which he is being tried. Section 19.05, creating the offense of Involuntary Manslaughter, provides that a person may commit such offense in either of two ways: either he recklessly causes the death of another individual; or by accident or mistake when operating a motor vehicle while intoxicated, he causes the death of another person by reason of such intoxication. As defined in Section 19.05(b), 'intoxication' means 'that the actor does not have the *normal use* of his *mental* or physical *faculties* by reason of the voluntary introduction of any substance into his body.' (Emphasis Added).

"By consideration of Sections 8.04 and 19.05 of the new Penal Code, it is apparent that the Legislature never intended to require proof of the culpable mental state of a person charged with an offense where one of the essential elements is voluntary intoxication. As can be seen by reviewing Section 19.05, involuntary manslaughter can be established without proof of a culpable mental state; proof that the accused caused the death of a person by reason of operating a motor vehicle while intoxicated is sufficient.

"It is common knowledge that intoxication temporarily destroys faculties essential to safe driving, *Schiller v. Rice*, 151 Tex. 116, 246 S.W.2d 607 (1952), and we cannot in good conscience speculate that the Legislature failed to recognize that which human experience has shown. Examination of the definitions of 'intoxication' contained in the new Penal Code shows that the Legislature recognized that intoxication impairs mental faculties. By enactment of Section 8.04(b), allowing evidence of temporary insanity caused by intoxication to be introduced in mitigation of punishment, it is apparent that they realized that intoxicated persons often act abnormally." [Footnotes omitted]

It is precisely because intoxicated persons may be less than conscious that we do not require that they consciously accept the risk of their conduct to find them accountable therefor.

The Legislature has consistently shown its concern with the dangerousness of driving while intoxicated. Until 1941 the offense of driving while intoxicated was a felony,[1] and when death resulted therefrom the offense was prosecuted under the felony murder rule.[2] By legislative mandate, no lesser included offense could be charged under such circumstances.[3]

When in 1941 the Legislature reduced first-offense driving while intoxicated to a

1. Article 802, V.A.P.C. (1925).

2. Article 42, V.A.P.C. (1925).

3. Article 1241, V.A.P.C. (1925); *Snyder v. State*, 132 Tex.Cr.R. 73, 102 S.W.2d 424 (1936).

misdemeanor, Article 802c was enacted to retain the offense of murder for death caused thereby:

"Any person who drives or operates an automobile or any other motor vehicle upon any public road or highway in this State, or upon any street or alley or any other place within the limits of an incorporated city, town or village, while such person is intoxicated or under the influence of intoxicating liquor, and while so driving and operating such automobile or other motor vehicle shall through accident or mistake do another act which if voluntarily done would be a felony, shall receive the punishment affixed to the felony actually committed."

In *Johnson v. State*, 153 Tex.Cr.R. 59, 216 S.W.2d 573 (Tex.Cr.App.1947), this Court said:

"The legislative purpose in the passage of Art. 802c, P.C. was to make specific application to the first offense of drunk driving the constituent elements of Art. 42, P.C. In other words, by Art. 802c, Vernon's P.C., the Legislature, by an independent statute, made applicable to the misdemeanor offense of drunk driving the elements of accident or mistake contained in Art. 42, P.C."

In *Greiner v. State*, 157 Tex.Cr.R. 479, 249 S.W.2d 601 (1952), we said:

"It is true that Art. 802c, Vernon's Ann.P.C., is not a murder statute. As to one engaged in the offense of driving a motor vehicle on a public highway while intoxicated, Art. 802c, supra, operates the same as does Art. 42, Vernon's Ann.P.C., as to one engaged in the commission of any felony. *The act done by accident or mistake is chargeable to the person engaged in the unlawful act as though intentionally done.*

"Prior to the amendment of Art. 802, P.C., in 1941, the offense of driving while intoxicated was a felony, and an accidental killing by one engaged in such unlawful act was under Art. 42, supra, held to authorize a conviction for murder without malice. See *Fox v. State*, 145 Tex.Cr.R. 71, 165 S.W.2d 733.

"The Legislature, in 1941, reduced the first offense of driving while intoxicated to a misdemeanor, and at the same time enacted Art. 802c, supra, thereby in effect leaving unchanged the law theretofore existing regarding an act done by accident or mistake by one engaged in driving a motor vehicle upon a public highway while intoxicated. See *Johnson v. State*, [153] Tex.Cr.App. [59], 216 S.W.2d 573." (Emphasis supplied).

Section 19.05(a)(2) is but Article 802c carried forward into the new code in a more current format; the Legislature has now mandated that what was formerly punished as a murder without malice shall be punished as involuntary manslaughter. But by retaining the language of "accident" and "mistake", the Legislature has made it clear that, just as "accident" and "mistake" formerly were held to mean "unintentional", *Thomason v. State*, 388 S.W.2d 700 (Tex.Cr.App.1965), where Section 802c made death caused by reason of a driver's intoxication a murder without malice, which would without Section 802c require *intent*, we should hold now that "accident" and "mistake" obviate the need to show recklessness to prove voluntary manslaughter, rather than *presuming* that recklessness. "Accident" and "mistake" do not presume intent; neither do they presume recklessness.

Our interpretation of Article 802c should be carried forward to Section 19.05(a)(2). In *Jones v. State*, 160 Tex.Cr.R. 640, 274 S.W.2d 400 (Tex.Cr.App.1955), we held that a conviction for negligent homicide could not stand where the allegations would sustain a conviction under Article 802c:

"This is a conviction for negligent homicide of the second degree. The unlawful act relied upon as constituting that offense is the driving, while intoxicated, of a motor vehicle upon a public highway.

"The information contains the other and requisite allegations necessary to constitute the offense of negligent homicide, including the allegation of negligence and carelessness and of the death of the deceased caused thereby.

"The punishment was assessed at a fine of $75 and six months in jail.

"At the outset, we are confronted with the contention that the misdemeanor offense of drunken driving may not be utilized and relied upon as the unlawful act constituting negligent homicide of the second degree.

"By Art. 802c, Vernon's P.C., it is a felony for an intoxicated driver of an automobile to kill another person by accident or mistake. Being a felony, such crime could not be prosecuted as the misdemeanor offense of negligent homicide of the second degree. *McCarthy v. State*, Tex.Cr.App., 218 S.W.2d 190; *Flowers v. State*, 150 Tex.Cr.R. 467, 202 S.W.2d 462, 203 S.W.2d 539.

"The judgment is reversed and the prosecution ordered dismissed."

In *Welborn v. State*, 166 Tex.Cr.R. 468, 314 S.W.2d 841 (Tex.Cr.App.1958), citing *Jones*, we said:

"It is well settled that it is a felony for an intoxicated driver of an automobile upon a public highway to kill another person by *negligence*, accident or mistake." (Emphasis supplied).

These cases negate the assertion that a lesser included offense can be charged where the allegations include driving while intoxicated and causing death by reason of the intoxication.

Our Legislature has consistently provided that, where the underlying offense of driving while intoxicated is the cause of the death of a person, no particular mental state need be pleaded or proved to hold the driver responsible.

It is the mere act of driving while intoxicated that sets up the danger the Legislature has sought to avoid; no further reckless acts are required. If, by reason of his intoxication, a driver's reaction time is increased, leading to the death of a person, that driver is guilty of involuntary manslaughter though he stayed in his lane, obeyed the speed limit, stopped at stop signs, and obeyed all other applicable laws. In such a case, no evidence would raise an issue of criminal negligence as a lesser in-cluded offense. How, then, can we say such an issue is raised where the conduct of the driver is overtly dangerous?

In the instant case, Ormsby engaged in conduct which might have been found to be reckless had he not been intoxicated. The State chose to indict upon the basis of his intoxication, however, and is entitled to rely upon that basis. The very dangerousness of Ormsby's conduct should not serve to circumvent the State's choice of allegations.

The judgment should be affirmed.